## JOHNSON *v.* HAMILTON, Administrator.

*Proceedings under the stat. of 10 March, 1834, relative to the titles of purchasers at judicial sales, cover matters of form only.*

It is no objection to a judgment rendered by a Court of Probates, that the judge, in signing it, annexed the words "Parish Judge" to his name. The discharge of the duties of judge of the Probate Court is part of the functions of the parish judge.

In an action by a creditor against the administrator of a succession, there is no occasion for the appointment of an attorney of absent heirs.

No period is fixed by law within which the property of a succession, offered for sale at the suit of a creditor, must be appraised.

APPEAL from the Court of Probates of Concordia, McWhorter, J.

The petitioner, *Johnson*, applied to the Probate Court for an order of seizure and sale of certain property mortgaged to him by the deceased. The property was sold, and purchased by *Johnson*, who applied for the homologation of the sale under the stat. of 1834. The homologation was opposed on the grounds: 1, That the judgment by which it was ordered, was signed "James Dunlap, *Parish Judge*," instead of judge of Probates. 2, That no counsel was appointed to represent the absent heirs. 3, That the property sold was not appraised within a year preceeding the sale. 4, That the property was not legally advertised. The oppositions were overruled, and the sale homologated; and from this judgment the defendant has appealed.

*Rowley* and *Frost*, for the opponents, cited Civil Code, art. 1157. 11 La. 116. 13 La. 431. 16 La. 65. 3 Robinson, 35. 10 Rob. 398. 1 Howard's Miss. Rep, 444. 6 Ibid. 114, 234.

*T. P. Farrar*, on the same side, contended that the property should have been appraised immediately before the sale, citing Code of Pract. art. 990. The appraisement in this case was made, when the inventory was taken, in March, 1840, and the sale on the 19th February, 1842. *Lawrence*, also appeared on the same side.

*Stacy, Sparrow*, and *H. A. Bullard*, for the petitioner. The validity of the judgment in this suit is contested on the ground that it was signed by *James Dunlap*, as "Parish Judge." The petition was addressed to "James Dunlap, Parish Judge, and *ex-officio Judge of Probates*, in and for the Parish of Concordia, State of Louisiana." The suit was brought against the defendant as *administrator*. The minutes of the proceedings in the suit, show that they were had in the Probate Court. The default was taken, and the judgment made final in that court. The probate judge is such from the fact alone of his being parish judge; his probate jurisdiction is *derivative* and *incidental*. It is an *ex-officio authority*. Code of Practice, art. 923. The petition must mention the name or title of the court to which it is addressed. Code of Practice, art. 172. The petition in this suit is addressed to the Probate Court, and to *James Dunlap* as *ex officio* judge of that court. This was clearly sufficient.

The next objection is, that there was no attorney appointed to represent the absent heirs. In August, 1840, *Miles B. Hamilton* was appointed administrator of the succession and tutor *ad bona* to certain absent minors, who, with *Miles B. Hamilton*, were then recognized by the Probate Court as the only heirs of the deceased *H. C. Hamilton*. They were then the only known and recognized heirs. They were represented by a *tutor ad bona*, under the 946th article of the Code of Practice (*Berluchaux* v. *Berluchaux et al.*, 7 La. 543,) and they, with *M. B. Hamilton* being at that time the *only known heirs*, and being *represented in this State*, no attorney for absent heirs could have been legally appointed. C. C. art. 1204. *Robouam* v. *Robouam's Executor*, 12 La. 73. *Addison* v. *New Orleans Savings Bank*, 15 La. 530.

An attorney of absent heirs does not represent the succession, but the heirs. He is the guardian of their interests against the illegal acts of the curator, who particularly represents the succession in all suits baought against it by creditors. Civil Code, art. 1146. Code of Practice, arts. 986, 984, 945. *Pratt* v. *Peets*, 3 La. 276. No doubt he could intervene in a suit to prevent the creditors and curator from colluding together to injure the succession. But he is not to be made a party defendant by the creditor—but the curator alone. He is simply designed as the protector of those he represents, against the *voluntary* and *discretionary* acts of the curator as to the succession. When the curator attempts to act, he must make an issue with the attorney; upon that issue a judgment is rendered. Civil Code, arts. 1156, 1157, 1208. But the *creditors* of the succession do not, and could not, legally make him a defendant in a suit against the succession for a debt of the deceased.

The third objection urged against the rule is, that the property had not been appraised within a year next preceeding the sale. A sufficient answer to this is that, *no law requires it*, and as it is nowhere stated at what time the appraisement of the property of a succession, sold for the payment of debts, shall be made. Code of Pract. arts. 990, 991. There are two cases in which appraisements are

required to be made within the year. One where the property of a succession is offered *at first* on a credit. Civil Code, arts. 1203, 1202. This is to prevent the property from being sacrificed; and the other, in case of a partition among the heirs. C. C. arts. 1247, 1248, 1249. Both in probate and in sheriff's sales, the appraisements are required for the protection and interest of the debtor. The creditor cannot get his money in cash unless the property brings the amount required; otherwise he must submit to a delay of twelve months. Now, if a sale for cash is not made, it matters not what might have been the appraisement. C. P. art. 990. The property of this succession was appraised at $48,583 25. This appraisement served as a basis at the offer to sell for cash; when so offered there was no bid to that amount, and it was then advertised on a credit. All this was in favor of the succession and adverse to the mortgage creditor. The appraisement completely affected the object intended by law, i. e. to prevent the sacrifice of the property by a forced sale for cash. 16 La. 555.

The judgment of the court was pronounced by

EUSTIS, C. J. This is an appeal from a judgment confirming a sale under the monition act of 1834. The proceedings under this act cover merely questions of form    udicial sales. *City Bank* v. *Walden*, 1 An. Rep. 46.

There is nothing in the objection raised, concerning the title which the judge appended to his signature. The proceedings were in the Court of Probates, and the judge acted as the judge of that court, which is a part of the functions of his office as parish judge. Nor was there any necessity for the ministry of an attorney of absent heirs.

We consider this as an ordinary case in which an administrator was bound to sell mortgaged property of a succession for the payment of debts, and the judgment of the plaintiff against the succession rendered the sale indispensable. The objection to the original appraisement as the basis of the sale, we consider untenable. The advertisements appear to have been made in conformity with law.

We are of opinion that there is no defect of form in the sale which renders it invalid, and that the court below did not err in confirming it.

*Judgment affirmed.*